NICODEMUS J. PETKUS, Plaintiff, *v.* LIETUVOS UKIO BANKAS, Defendant.

Supreme Court, Kings Special Term. May 13, 1924.

Sales — contract to purchase stock in foreign bank — payment to be made in German marks or United States dollars at option of buyer — buyer elected to pay in German marks — seller refused to perform — buyer entitled to demand back German marks or their value on day contract was to be performed — complaint by buyer does not state action for rescission but does state action for money had and received — allegation by buyer of complete non-performance by seller rendered allegation of rescission unnecessary — damages cannot be awarded in German marks but must be in legal tender.

Where a contract for the purchase of stock in a foreign bank gave the buyer the option to pay therefor with German marks or with United States dollars, and he elected to and did pay with German marks he is entitled, upon the refusal of

the seller to perform the contract after demand, to recover either the stock or the German marks paid as of the value of either on the day when the contract was to be performed.

A complaint in an action by the buyer alleging complete non-performance on the part of the seller after demand does not state a cause of action for rescission but does state a cause of action for money had and received.

The allegation by the buyer of complete non-performance by the seller, that is, repudiation of the contract by it, makes unnecessary any rescission or pleading thereof by the buyer.

The court can only award damages in legal tender. It cannot award damages in German marks.

MOTION by the defendant for judgment under section 476 of the Civil Practice Act.

*McQuiston & Malcolm (Victor McQuiston,* of counsel), for the plaintiff.

*Murray, Aldrich & Roberts (Otey McClellan,* of counsel), for the defendant.

CARSWELL, J. This is a motion made by the defendant for judgment under section 476 of the Civil Practice Act. It is made upon the pleadings and bill of particulars. The amended complaint, defendant claims, fails to state a cause of action in that while purporting to proceed upon the theory of a rescission of a contract made by plaintiff with the defendant, which contract has not been performed by the defendant in any particular, it fails to allege a rescission or facts constituting a rescission; that on the contrary, such facts as it pleads are insufficent in law to be a rescission.

Plaintiff conceded he is proceeding in disaffirmance of the contract. The contract he asserts he has elected to rescind prior to the beginning of this action was one for the purchase of a block of stock in a bank in Lithuania. The agreement to sell the stock provided that a given number of shares were to be sold at the rate of 500 German marks per share. It is also alleged that defendant agreed that the purchase of the stock could be with either German marks or United States dollars. The plaintiff bought with German marks. He procured the German marks with American dollars. He procured 1,000,000 German marks for $12,350. He transmitted the check for the marks to the defendant on or about August 4, 1921. He alleges that thereafter the defendant did not send the stock, although due demand was made therefor, and that he demanded that the defendant refund to him the sum of 1,000,000 German marks paid by him to the defendant in their value as of August 4, 1921, in United States dollars.

When the plaintiff exercised his right to rescind, he was entitled to demand back that which he had paid. But he elected to and

did pay German marks; therefore, he may only demand back that which he elected to pay, to wit, German marks. He may not demand back the equivalent of the marks in any other currency, United States or otherwise. If plaintiff wished to assert his right to demand back the equivalent of 1,000,000 German marks as of August 4, 1921, in United States currency, he should have paid the defendant on August 4, 1921, in United States currency. Then and in that event, if the defendant failed to carry out its contract, and plaintiff elected to rescind, the defendant would be required to pay back that which it received, to wit, United States currency to the amount of $12,350 or damages based thereon.

The option which was afforded to him by the defendant as to the manner in which he might pay for the stock did not persist in the relations of the parties after the option had been acted upon by the plaintiff.

The accuracy of this conclusion is made apparent by considering a concrete situation which is not concerned with money. For instance, suppose the situation was one of primitive barter. Suppose A agreed to deliver an identified horse to B in exchange for either two identified cows or ten identified sheep. B has neither the sheep nor the cows but has other chattels with which he can obtain ownership of either the sheep or the cows. B elects to obtain and does deliver the sheep. A later fails to deliver the horse as agreed. B elects to rescind the contract and makes a demand to that end. Before doing so the intrinsic value of the ten sheep which had an equivalent value to the two cows at the time of the agreement has depreciated. He, therefore, because A at one time was willing to accept the equivalent of the ten sheep in the form of two cows demands that A give him back two cows. A never received the two cows, although he received their one time equivalent in value in sheep. It would be a patent absurdity to hold that a demand for the return of the cows, which had never been delivered by B to A, entitled B to damages based upon the value of the cows as at the date of the delivery of the sheep in an action *based on rescission.* Such a demand made by B upon A would inevitably be held not to be such a rescission as would sustain a cause of action set out on the theory of a disaffirmance of the contract. This illustration is precisely parallel to the facts involved in the complaint herein.

The case of *Richard* v. *American Union Bank,* 123 Misc. Rep. 92, which holds foreign money is a commodity, tends to make the foregoing illustration more exactly parallel the facts in the case at bar.

This view is on the premise accepted on the argument and briefs of plaintiff and defendant that a rescission is needful to be pleaded

to sustain the statement of a cause of action herein. But that premise is unsound and its acceptance is not determinative of whether a cause of action has been stated herein.

Plaintiff was entitled to the stock or the German marks paid as of the then value of either, on August 4, 1921, the day when the contract was to be performed.

The defendant founds its argument that a *valid* allegation of rescission in the complaint herein is indispensable upon certain cases. *Calumet & Hecla Mining Co.* v. *Equitable Trust Co.*, 186 App. Div. 330; *Trempe* v. *Perlman*, 187 id. 745; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *McGowan* v. *Blake*, 134 App. Div. 165; *Gould* v. *Cayuga Co. National Bank*, 86 N. Y. 75. The plaintiff acquiesces in the view that an allegation of rescission is necessary. Plaintiff, however, can and may insist that the complaint states a cause of action for money had and received, if the allegations that purport to be a rescission be disregarded as surplusage. *Lauer* v. *Raymond*, 190 App. Div. 319, 325. Plaintiff is entitled to every reasonable intendment arising from his allegations.

The cases which the defendant relies upon and which plaintiff has acquiesced in as controlling, are all cases where alleged fraud was involved and where a rescission was needful prior to the commencement of the action and a tender back of a partial performance, necessary to entitle the plaintiff to maintain a money had and received action in conformity with equitable principles. For instance, in *Calumet & Hecla Mining Co.* v. *Equitable Trust Co.*, *supra*, it appeared that the plaintiff had the bills of lading which were symbolic of the property delivered to the defendant, and until there was a restoration or an offer to surrender them no cause of action for money had and received could arise. In *Gould* v. *Cayuga Co. National Bank*, *supra*, there were moneys that had been received by the plaintiff which had to be tendered back on a basis of rescission before a cause of action for money had and received could exist. The same is true of the other cases. There either had been a partial performance that required an act on the part of the plaintiff to restore the *status quo* by way of a tender, or the defendant's position was one which he may have changed before the plaintiff may have elected to rescind. *Gravenhorst* v. *Zimmermann*, 236 N. Y. 22, 34.

In the instant case, however, we have a situation pleaded where the plaintiff never received anything by way of performance from the defendant.

Plaintiff alleges that the defendant refused to perform, that is, to deliver the stock. This is an allegation, after plaintiff had fully performed, of repudiation by the defendant of the contract which

plaintiff alleges he made with the defendant. The failure of the defendant to perform and deliver the stock immediately upon the receipt of the 1,000,000 German marks from the plaintiff, gave rise to a cause of action for damages as of that date, of failure to perform, or as of the date of repudiation of the contract by the defendant, the date of its refusal to perform.

When A sells an article to B, delivery to be made immediately upon the delivery by B of a given sum of money or piece of property as payment therefor, a cause of action for money had and received arises if A on the date delivery of the article is due, or any time thereafter, repudiates the contract by refusing to perform. In such a situation there is no need for a pleading of facts of rescission by B before commencing suit, nor is there any need for a demand by B after the repudiation before commencing suit. The beginning of the suit is demand in itself. The fact of complete nonperformance by the defendant herein, which is alleged in the complaint, that is, of repudiation of the contract by the defendant, makes unnecessary any rescission or pleading thereof by plaintiff, since he had completely performed according to his allegations. 6 R. C. L. § 311; Williston Sales, § 600; *Raymond* v. *Bearnard,* 12 Johns. 274; *Monroe* v. *Reynolds,* 47 Barb. 574; *Main* v. *King,* 8 Barb. 535, 537; *O'Kane* v. *North American Distilling Co.,* 171 N. Y. Supp. 275, 276; *Henderson Tire & Rubber Co.* v. *Wilson,* 235 N. Y. 489, 498, 500; *Hurst* v. *Litchfield,* 39 id. 377. Moreover an action for money had and received lies where goods or chattels instead of money have been delivered to another in lieu of money. 5 C. J. 1388; *Ainslie* v. *Wilson,* 7 Cow. 662. An action for money had and received (assumpsit) lies for the recovery of *damages* for non-performance of a simple contract. 5 C. J. 1380; *Ainslie* v. *Wilson, supra.*

But can this court award damages in German marks? It cannot. It can only award damages in legal tender. It can award damages in gold coin, where parties specially contract with reference to such currency because it is legal tender; otherwise it awards damages in legal tender without specification as to gold coin. *Bronson* v. *Rodes,* 74 U. S. [7 Wall.] 229, 254; *Butler* v. *Horwitz,* 7 Wall. 258; *Chrysler* v. *Renois,* 43 N. Y. 209; *Wild* v. *N. Y. & A. Silver Mining Co.,* 59 id. 644; *Greentree* v. *Rosenstock,* 61 id. 583, 590. The damages, therefore, must be measured in the legal tender of the country in which the court is functioning when it awards them. When foreign money, a mere commodity, is the basis of the damage computation, the damages are fixed in the domestic legal tender equivalent of the value of foreign money or commodity (at the rate of exchange prevailing) at the time when, and the place where,

the contract ought to have been performed.   *Di Ferdinand* v. *Smits & Co.*, 11 Am. Law Reg. 358; *Ladd* v. *Arkell*, 8 J. & S. 150; *Guiteman* v. *Davis*, 3 Daly, 120; *Stewart* v. *Chambers*, 2 Sandf. Ch. 422; *Robinson* v. *Hall*, 28 How. Pr. 342; *King* v. *Hamilton*, 12 Fed. Rep. 478; 18 R. C. L. § 17.

Applying these principles to the instant case, as of which day the value of 1,000,000 German marks is to be fixed in United States dollars will be determined under the pleadings on the evidence as to whether the cause of action arose on the day that the plaintiff delivered his check to the defendant or as of the day when the defendant repudiated the contract and refused to perform in any particular.   I think the repudiation will relate back to the day performance was due.   This result evolves justice between these parties and prevents the defendant profiting by its own wrong, if it be established to have been at fault, by its refusing to perform and seeking to delay (to its profit) the repayment of the 1,000,000 German marks to a date when they had depreciated in value.

I conclude, therefore, that disregarding the surplusage of the complaint and the concessions of the plaintiff as to what allegations are needful therein, a cause of action for money had and received is stated and the motion by defendant for judgment must be denied.

Ordered accordingly.